OPINION.
{¶ 1} Plaintiff-appellee/cross-appellant, Sandra F. Zerbe, and defendantappellant/cross-appellee, John J. Zerbe, both appeal from a divorce decree ending the parties' marriage and dividing their property. The parties raise numerous issues in their six assignments of error, which we address out of order.
I. Attorney Fees
 {¶ 2} In his first assignment of error, John contends that the trial court erred in ordering him to pay Sandra $50,000 in attorney fees. He argues that the evidence did not support an award of attorney fees. He also argues that the court should have conducted a hearing on the reasonableness of the fees charged before making an award of attorney fees. Because the court should have determined the reasonableness of the amount of attorney fees, we find this assignment of error to be well taken.
 {¶ 3} The court may order one party to pay the other party's attorney fees if a statute authorizes the shifting of fees. Vance v.Roedersheimer, 64 Ohio St.3d 552, 556, 1992-Ohio-89, 597 N.E.2d 153; Gillv. Gill (Oct. 10, 1997), 1st Dist. No. C-960610. R.C. 3105.18(H) provides that a court may award fees in a divorce action if it determines that (1) the party paying the fees has the ability to pay, and (2) the other party would be prevented from fully litigating his or her rights without an award of attorney fees. An appellate court will not disturb an award of attorney fees absent an abuse of discretion. Sutphin v. Sutphin, 1st Dist. Nos. C-030747 and C-030773, 2004-Ohio-6844, ¶ 37; Berger v.Berger, 1st Dist. No. C-030631, 2004-Ohio-5614, ¶ 8.
 {¶ 4} The evidence in this case showed that John is a medical doctor who earns substantial income, and he is able to pay the attorney fees. Sandra has been a stay-athome mother for the most of the parties' twenty-two-year marriage. She returned to college to earn a degree so that she may obtain employment. She had very little income with which to pay her own attorney fees, and she would not have been able to adequately protect her interests without an award of fees. Under the circumstances, the trial court's decision to award attorney fees to Sandra was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218,450 N.E.2d 1140; Sutphin, supra, at ¶ 38-39.
 {¶ 5} While an award of attorney fees was appropriate, the court never appropriately determined the correct amount of fees to be awarded. A hearing on a request for attorney fees may not always be necessary. SeeMeyers v. Hot Bagels Factory, Inc. (1999), 131 Ohio App.3d 82, 102,721 N.E.2d 1068; Fisher v. Fisher, 3rd Dist. No. 7-03-01, 2004-Ohio-290, ¶ 46;Cesa v. Cesa, 5th Dist. No. 01 CA 12, 2001-Ohio-1902; Wolk v.Wolk, 7th Dist. No. 98 CA 127, 2001-Ohio-3415. But, see, Local Rule 17.1 of the Hamilton County Domestic Relations Court. Nevertheless, at a minimum, the record must contain some evidence of the reasonableness of the fees. Whitaker v. Estate of Whitaker (1995), 105 Ohio App.3d 46,56, 663 N.E.2d 681. The movant bears the burden to present evidence of the services performed and the reasonable value of those services. Wolk,
supra.
 {¶ 6} In determining the reasonableness of the fees, the court must consider the factors set forth in DR 2-106(B) of the Code of Professional Responsibility, as stated in Swanson v. Swanson (1976),48 Ohio App.2d 85, 90, 355 N.E.2d 894. Whitaker, supra, at 56-57,663 N.E.2d 681; Farley v. Farley (1994), 97 Ohio App.3d 351, 356,646 N.E.2d 875; Donese v. Donese (Sept. 29, 2000), 2nd Dist. No. 2000-CA-17. An award of attorney fees based on a mechanical formula of multiplying the number of hours spent by the hourly rate of counsel is deficient as a matter of law. Farley, supra, at 356, 646 N.E.2d 875;Swanson, supra, at 92, 355 N.E.2d 894.
 {¶ 7} At a hearing on the property division, Sandra's counsel stated that the parties had discussed stipulating to the reasonableness of fees, but John's counsel would not stipulate. He did agree that Sandra's counsel could submit an affidavit regarding fees and that the matter would be discussed at a subsequent hearing. Sandra's counsel submitted a detailed affidavit setting forth the hours worked and the fees charged per hour. She also described the issues involved and her qualifications. Ultimately, the total fees charged were approximately $67,000. The issue of attorney fees was not raised at a subsequent hearing on property division.
 {¶ 8} In his decision, the magistrate ordered John to pay Sandra $30,000 in attorney fees "as a fair and reasonable award." Following objections by both parties, the trial court ordered John to pay $50,000 toward Sandra's attorney fees, finding that $30,000 was inadequate given the amount of fees owed. The court went on to state that "[s]he has been awarded no liquidity in the decision of the Magistrate and is solely and completely dependent upon spousal support for her support and maintenance and the support of the minor child, Bibi. There is no reason for Plaintiff to leave the marriage with this debt, when Defendant has the ability to contribute to her attorney fees."
 {¶ 9} The record does not show that the court ever considered theSwanson factors. Its decision seems to have been based entirely on Sandra's need and John's ability to pay, which were not the only issues to be considered. Despite Sandra's claim to the contrary, John raised the issue on numerous occasions and properly objected to the amount of fees the magistrate's decision had ordered him to pay, as required by Civ.R. 53(E)(3). See State ex rel. Booher v. Honda of Amer. Mfg., Inc.,88 Ohio St.3d 52, 53-54, 2000-Ohio-269, 723 N.E.2d 571; Ayer v. Ayer
(June 30, 2000), 1st Dist. No. C-990712.
 {¶ 10} Under the circumstances, we hold that the trial court erred in awarding Sandra $50,000 in attorney fees. See Wolk, supra; Donese,
supra. Consequently, we sustain John's first assignment of error. We reverse that part of the decree awarding Sandra attorney fees, and we remand the matter to the trial court to determine a reasonable fee award.
II. New Trial
 {¶ 11} The record shows that the magistrate originally recommended that John pay Sandra spousal support of $7,500 per month for two years, $6,000 per month for the subsequent two years, and $5,000 per month for a final two years. Following objections by both parties, the trial court found that "given the financial positions of each party, their respective earning potential, the duration of the marriage, Plaintiff's role as caregiver for the children, the need for Plaintiff to obtain an education, and the tax consequences, the spousal support award set by the Magistrate is insufficient as to amount and duration." It ordered John to pay Sandra spousal support of $9,000 per month for seven years.
 {¶ 12} After the divorce decree was journalized, John filed a motion for a new trial on the issue of spousal support in which he argued that the award of spousal support was excessive in amount and duration, was not supported by the evidence, and was contrary to law. In support of that motion, he submitted the affidavit of a certified public accountant in which the accountant contended that in view of John's income, his payment of child support and tuition for the parties' children, and tax consequences the court had not previously considered, the award of spousal support in the decree constituted 49.37% of his net cash flow. Sandra filed a memorandum in opposition to John's motion. In support of her memorandum, she submitted the affidavit of a certified financial planner refuting the contentions raised in the affidavit of John's expert.
 {¶ 13} The trial court granted John's motion for a new trial. It stated that "based on the analysis of the tax consequences and the resultant net, spendable dollars, the Court's Entry * * * and resultant Decree do not contain an equitable spousal support award." It further stated that "[g]iven the information supplied by Defendant in his motion and Plaintiff in her response, a new trial on the issue of spousal support is not required." The court then ordered John to pay Sandra spousal support of $7,500 per month for the first three years, and $6,500 per month for the next four years.
 {¶ 14} Sandra raises procedural issues relating to the trial court's order granting John's motion for a new trial on spousal support. She contends in her first assignment of error that the trial court should not have granted John's motion for a new trial because he failed to raise adequate grounds to justify a new trial, because the court did not actually hold a new trial, and because the court did not adequately state its basis for ordering a new trial. This assignment of error is not well taken.
 {¶ 15} Civ.R. 59(A) provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues" upon various grounds including "the judgment is not sustained by the weight of the evidence," "the judgment is contrary to law," or "error of law occurring at the trial and brought to the attention of the trial court by the party making the application." The rule also states that in addition to the specified grounds, the trial court, in its discretion, may grant a new trial "for good cause shown."
 {¶ 16} Where the trial court is authorized to grant a new trial for a reason that requires the exercise of discretion, an appellate court may reverse an order granting a new trial only upon a showing of an abuse of discretion. Antal v. Olde Worlde Products, Inc. (1984), 9 Ohio St.3d 144,145, 459 N.E.2d 223. When the court grants a new trial for reasons that require a decision on a question of law, an appellate court may reverse the trial court's decision upon a showing that it was erroneous as a matter of law. Rohde v. Farmer (1970), 23 Ohio St.2d 82, 262 N.E.2d 685, paragraph two of the syllabus; Bryant v. Walt Sweeney Automotive, Inc.,
1st Dist. Nos. C-010395 and C-010404, 2002-Ohio-2577, ¶ 9.
 {¶ 17} Sandra seems to contend that the issues raised in John's expert's affidavit were not newly discovered evidence that could not have been discovered and produced at trial. While newly discovered evidence is a ground for granting a new trial, see Civ.R. 59(A)(8), it is not the ground the trial court used to justify granting the motion in this case. Even if John's motion did not fit under any of the more specific grounds set forth in Civ.R. 59(A)(1) through (9), the trial court did not abuse its discretion in finding that he had shown "good cause" for a new trial.
 {¶ 18} Sandra relies on cases regarding Civ.R. 60(B) motions for relief from judgment, in which courts have held that a party cannot use the catchall provision of Civ.R. 60(B)(5) to substitute for a more specific provision. See Caruso-Ciresi, Inc. v. Lohman (1983),5 Ohio St.3d 64, 66, 448 N.E.2d 1365. But the "good cause" provision of Civ.R. 59(A) recognizes the court's inherent power to grant a new trial. Staff Note to Civ.R. 59; Hart v. Hart (Oct. 26, 1992), 2nd Dist. No. 13147. We find only one case that states that a party may not use the "good cause" provision as a substitute for the more specific provisions. See Poling v. Robinson (Mar. 11, 1980), 3rd Dist. No. 1-79-42. Other cases have not adopted that limitation, and we decline to do so. See Fink, Greenbaum and Wilson, Guide to Ohio Rules of Civil Procedure (2003), Section 59:16. In fact, this court has stated that the "good cause" provision is an independent ground for granting a new trial "available for use in the interest of justice." Jamison v. Schrenker
(Nov. 5, 1986), 1st Dist. No. C-850887.
 {¶ 19} Sandra also argues that the trial court abused its discretion by granting a new trial, then in bypassing the new trial and holding a "trial by affidavit." Civ.R. 59(A) also provides that "[o]n a motion for a new trial in an action tried without a jury, the court may open the judgment, if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment." The staff note further clarifies that, in an action tried without a jury, a court "may take additional testimony or amend its findings and then enter a new judgment. In effect, the rule provides for a partial new trial in a non-jury action so that the complete retaking of testimony may be avoided." Cicchini v.Crew, 8th Dist. No. 80723, 2002-Ohio-5467, ¶ 5; Prarat v. Amer.Analytical Laboratories, Inc. (Jan. 27, 1993), 9th Dist. No. 15715.
 {¶ 20} The use of the word "may" in a statute or rule indicates that the provision in which it is contained is "optional, permissive or discretionary." Dorrian v. Scioto Conservancy Dist. (1971),27 Ohio St.2d 102, 107, 271 N.E.2d 834; In re Estate of Rothert, 1st Dist. No. C-010604, 2002-Ohio-2150, ¶ 3. Consequently, although the court may take additional testimony, it need not do so. The taking of additional evidence lies within the trial court's discretion. Thirty-FourCorp. v. Sixty-Seven Corp. (June 3, 1986), 10th Dist. Nos. 85AP-180 and 85AP-192.
 {¶ 21} Courts in domestic relations cases have allowed the granting of motions for new trials on the issues of property division and spousal support, rejecting the argument that the granting of such a motion constitutes an inappropriate modification of the decree. Moreover, courts have allowed the reopening of a judgment upon the filing of a motion for a new trial without taking additional testimony, although in some cases the motions were nominally denied, but the judgments reopened. See, e.g., Marksbury v. Marksbury (1988), 46 Ohio App.3d 17, 18-19,545 N.E.2d 651; Knox v. Knox (1986), 26 Ohio App.3d 17, 18-20,498 N.E.2d 236. Bunch v. Bunch, 5th Dist. No. 2003CA00185, 2003-Ohio-6174, ¶ 9-13; Starkey v. Starkey (Mar. 22, 1996), 5th Dist. 95 AP 070055;Moffett v. Moffett (Mar. 21, 1988), 7th Dist. No. 87-C-27.
 {¶ 22} Here, the trial court, as the trier of fact, had heard all the testimony relating to the parties' assets and income. The primary issue presented in John's motion for a new trial was the tax consequences of the court's award of spousal support and John's net spendable dollars after taxes. This was not a situation where Sandra had no opportunity to respond to the issues raised in John's motion. In fact, John asked the court to use the figures presented by Sandra because he felt they illustrated "just as well what the problem is." Consequently, taking further testimony would not have assisted the court. Under the circumstances, we cannot hold that the court's decision to reopen the judgment without hearing additional testimony was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. SeeBlakemore, supra, at 218, 450 N.E.2d 1140.
 {¶ 23} Sandra also argues that the trial court failed to adequately explain the basis for its decision to grant a new trial. Civ.R. 59(A) provides that when the court grants a new trial, it "shall specify in writing the grounds upon which the new trial is granted." This rule does not establish a stringent requirement, and a reviewing court must review each case on an individual basis. Mannion v. Sandel, 91 Ohio St.3d 318,322, 2001-Ohio-47, 744 N.E.2d 759. In this case, the court stated the basis for its decision in sufficient detail to allow this court to conduct a meaningful appellate review, which is the reason for the specification requirement. See Mannion, supra, at 321-322, 2001-Ohio-47,744 N.E.2d 759; Winson v. Fauth (1989), 63 Ohio App.3d 738, 741,580 N.E.2d 44; Seibel v. Kent (Nov. 29, 1989), 1st Dist. No. C-870810.
 {¶ 24} In sum, we find no reversible error by the trial court in granting John's motion for a new trial or in the procedure the court used. Accordingly, we overrule Sandra's first assignment of error.
III. Spousal Support
 {¶ 25} We now turn to the merits of the spousal support awarded in the entry granting John's motion for a new trial. In his second assignment of error, John contends that the trial court erred by awarding an excessive amount of spousal support for an excessive period of time. He argues that even under the reduced amount of support following his motion for a new trial, he will be paying Sandra over 33% of his income for the next seven years. In her second assignment of error, Sandra argues that the trial court erred in reducing the amount of child support following John's motion for a new trial because the evidence supported the amount of spousal support ordered in the divorce decree. These assignments of error are not well taken.
 {¶ 26} R.C. 3105.18 provides that the court may award spousal support as is "appropriate and reasonable." Sutphin, supra, at ¶ 12. This standard is much broader than the previous standard of whether support was "necessary." Gray v. Gray, 8th Dist. No. 80625, 2003-Ohio-3793, ¶ 12-16; Cooper v. Cooper (Aug. 24, 2001), 6th Dist. No. L-01-1194. In making this determination, the court must consider the factors set forth in R.C. 3105.18(C)(1). Sutphin, supra, at ¶ 12-26. These factors include the income of the parties, the earning capacity of the parties, the duration of the marriage, and the standard of living during the marriage. Schroeder v. Schroeder (Aug. 18, 2000), 1st Dist. No. C-990532. The trial court has broad discretion in determining an award of spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67,554 N.E.2d 83; Sutphin, supra, at ¶ 11.
 {¶ 27} The record shows that the court carefully considered the factors set forth in R.C. 3105.18(C)(1), including the disparity of income between the parties, Sandra's need to finish her education to improve her earning capacity, the standard of living the parties had enjoyed during the marriage, the twenty-two-year duration of the marriage, and the parties' ages and physical, mental and emotional conditions.
 {¶ 28} Following John's motion for a new trial, the court considered the tax consequences of its previous order of spousal support and John's liabilities following the property division. Under the circumstances, the court's finding that an award of spousal support of $7,500 per month for the first three years, and $6,500 per month for the next four years, was appropriate and reasonable, and was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See Blakemore,
supra, at 218, 450 N.E.2d 1140; Sutphin, supra, at ¶ 27-29; Schroeder,
supra. Accordingly, we overrule John's second assignment of error and Sandra's second assignment of error.
IV. Property Division
 {¶ 29} In his third assignment of error, John contends that the trial court erred by awarding Sandra a disproportionate share of the marital assets. He argues that the court awarded Sandra over $50,000 more in assets without any supporting evidence. This assignment of error is not well taken.
 {¶ 30} R.C. 3105.171(C)(1) provides that the court should divide marital property equally unless an equal division would be inequitable. R.C. 3105.171(F) sets forth the factors the court must consider in making its decision. Raphael v. Raphael (Nov. 19, 1999), 1st Dist. No. C-980696. The trial court has broad discretion in fashioning an equitable division of marital property. Berish v. Berish (1982), 69 Ohio St.2d 318,319, 432 N.E.2d 183; Berger, supra, at ¶ 13; Raphael, supra. Further, an appellate court should not review discrete aspects of the property division out of the context of the entire award. Baker v. Baker (1992),83 Ohio App.3d 700, 702, 615 N.E.2d 699; Nickerson v. Nickerson (May 22, 1998), 1st Dist. No. C-970431.
 {¶ 31} In justifying the disparity in the property division, the magistrate stated, "Wife's division of assets is $52,647.00 greater than Husband's assets. To equalize the assets, Wife would owe Husband $26,323.40. This amount is to be offset to Wife due to the fact that Husband is awarded the GE Deferred Salary Plan which the Evaluator estimated would increase considerably due to Husband's continued performance with GE. Therefore, the projected value is totally within Husband's capability depending on his future employment. Since the projected value is difficult to determine but within Husband's choice, Wife should be awarded the difference in the division of marital assets with Husband[.]" The trial court overruled John's objection to the unequal property division, concluding that the magistrate had "stated sufficient reasons for the unequal property division." We agree.
 {¶ 32} We first note that both parties received over $600,000 in assets in the property division. With such substantial assets, the discrepancy was not as significant as in a marriage with fewer assets. Further, the trial court took into account the larger share of the assets Sandra received in other aspects of the property division.
 {¶ 33} As John argues, the court did use the plan's present value of $176,118 in awarding the marital assets. But the evaluator testified that because the asset guaranteed a ten-to-twelve-percent compound annual interest rate, the plan had a higher true value of approximately $350,000. Thus, competent, credible evidence supported the magistrate's determination that the asset might increase in value. See Burroughs v.Burroughs (Mar. 10, 2000), 1st Dist. Nos. C-990001 and C-990031;Nickerson, supra.
 {¶ 34} Further, our review of the record shows that the property division overall was equitable. We cannot hold that the trial court's decision to allow the extra assets as an offset to Sandra, particularly given her lack of income, was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See Blakemore,
supra, at 218, 450 N.E.2d 1140. Accordingly, we overrule John's third assignment of error.
 {¶ 35} In her third assignment of error, Sandra contends that the trial court erred in the valuation of two assets, the parties' home and John's medical practice. As to the marital residence, Sandra was awarded the marital residence and ordered to pay the mortgage and other expenses associated with the home. Sandra argues that the court should have deducted the expenses from the sale of the home from its assigned value.
 {¶ 36} John argues that the evidence did not show that Sandra had decided to sell the home, and that the expenses of sale were therefore too speculative to be included as part of the property division. SeeGuidubaldi v. Guidubaldi (1990), 64 Ohio App.3d 361, 367-368,581 N.E.2d 621; Day v. Day (1988), 40 Ohio App.3d 155, 159-160,532 N.E.2d 201. The record does not support this contention. It shows that although Sandra was undecided about selling the house early in the proceedings, she later decided to go along with John's wishes to sell it and was actively engaged in the sale by the time the parties had filed objections to the magistrate's decision.
 {¶ 37} The record shows that the trial court considered the issue of the sale expenses. In overruling Sandra's objection regarding this issue, the court stated that "[t]he marital home is currently on the market for sale listing for $729,000.00. Plaintiff has incurred $4,000.00 in the cost of repairs to put it on the market. The real estate commission if sold will be 6%. The Magistrate set the fair market value of the home at $700,000 and the equity to be $322,800.25. Although these facts may reduce Plaintiff's marital share, she received an unequal division of assets. A court order to sell the residence and credit the cost of sale will continue to unreasonably entangle the parties' finances."
 {¶ 38} We find no error by the trial court. As we have already stated, the overall property division was equitable. The court properly ordered Sandra to be responsible for the costs of the sale of the asset that she had been awarded and that was listed for sale at a greater value than the magistrate had assigned to it. Further, the court clearly offset those costs against the greater share of the assets that Sandra had received. Under the circumstances, the court's decision regarding the costs associated with the sale of the marital residence was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See Blakemore, supra, at 218, 450 N.E.2d 1140.
 {¶ 39} Sandra next argues that the trial court set an improper value for John's medical practice. The magistrate assigned it a value of $20,000, with no explanation of how he had arrived at that figure. Sandra objected to that value, and the trial court overruled the objection. It stated, "There being no testimony regarding the value of the medical practice and Defendant's testimony makes it clear there is no market for the sale of the practice, the Magistrate set an appropriate value."
 {¶ 40} Sandra contends that the practice's balance sheet showed that as of July 31, 2002, John had a total equity in the practice of $28,951, after deducting liabilities, and the practice had accounts receivable amounting to $33,905. Thus, without even considering goodwill, the practice had a value of at least $62,857. See Kahn v. Kahn (1987),42 Ohio App.3d 61, 63-66, 536 N.E.2d 678.
 {¶ 41} John contends that this balance sheet did not accurately reflect the value of the business. He argues that a closer look shows that the actual assets of the business, excluding his income from which he had to pay taxes, spousal support, child support and tuition expenses, totaled $29,580. The actual liabilities were $13,632. Its net value, if any, was therefore $15,948. As indicated by the trial court, he also testified that hospitals were no longer buying medical practices, and, therefore, that it had no market value.
 {¶ 42} Thus, the evidence showed that the practice either had a value of approximately $62,000 or $16,000. We find no evidence in the record supporting the $20,000 figure that the trial court used as the value. A finding of value must be supported by competent, credible evidence. The court cannot take the two extremes presented by the evidence and choose a value somewhere between those two extremes. McCoy v. McCoy (1993),91 Ohio App.3d 570, 578, 632 N.E.2d 1358; Farmer v. Farmer (Oct. 9, 1996), 1st Dist. Nos. C-950846 and C-950853. Consequently, we hold that the trial court erred in setting the medical practice's value at $20,000. We sustain Sandra's third assignment of error as it relates to the medical practice. We remand the case to the trial court to determine the value of the medical practice based on the evidence and to reconsider the property division based on that new value.
V. Summary
 {¶ 43} We sustain John's first assignment of error relating to attorney fees. We reverse the court's award of attorney fees and remand the case for the court to determine a reasonable fee award. We also sustain Sandra's third assignment of error relating to the valuation of John's medical practice. We reverse that part of the trial court's judgment and remand the case to the trial court to determine the value of the practice and to consider the effect of that new value on the overall property division. We affirm the trial court's judgment in all other respects.
Judgment affirmed in part and reversed in part, and cause remanded.
Painter and Sundermann, JJ., concur.