[Cite as *Sherman v. Sherman*, 2013-Ohio-3501.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JACK SHERMAN, JR., | : | APPEAL NO. C-120691 |
| | | TRIAL NO. DR-1101969 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| SCARLETT A. SHERMAN, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas, Domestic Relations
                Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  August 14, 2013

*Buechner Haffer Meyers & Koenig Co., LPA, Gloria S. Haffer* and *Robert J. Meyers,*
for Plaintiff-Appellee,

*Cohen Todd Kite & Stanford, LLC*, and *Jeffrey Rollman*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}   Defendant-appellant Scarlett Sherman appeals from the decree of divorce entered by the Hamilton County Court of Common Pleas, Domestic Relations Division, terminating her marriage to plaintiff-appellee Jack Sherman, awarding Scarlett spousal support and dividing the parties' assets and debts.   Because we determine that her five assignments of error lack merit, we affirm the trial court's judgment.

### *History of the Parties*

{¶2}   The parties married on March 1, 2004; however, their romantic relationship preceded that date.   According to Scarlett, she and Jack were engaged to be married twice—once in 1982 and once in 1988.   With regard to the 1982 engagement, Scarlett and Jack lived together during that period of time, but Jack ended their relationship abruptly.   The two reunited in 1988 while Jack was running for a judgeship on the Hamilton County Court of Common Pleas, and they became engaged again.   Scarlett spent a great deal of time assisting Jack in his election efforts, including attending parades and campaign events.   Although Jack lost the election, he was appointed to a federal magistrate position, and Scarlett assisted the FBI in its investigation of Jack in connection with that appointment.   Scarlett claims that Jack abruptly ended their relationship again after his appointment.   Jack did not have the same recollection of their past.   He downplayed the seriousness of their romantic involvement, and he denied that they were ever formally engaged at either time.

{¶3}   After 16 years without communicating, Jack contacted Scarlett "out of the blue."   He had recently retired from the federal judiciary, and he wanted to

rekindle their romance. The two married shortly thereafter. The parties had no children and enjoyed a nice standard of living, which included three vacations per year, and theater and symphony tickets. Scarlett worked part-time for LensCrafters when she married Jack, but she retired early in 2009 at Jack's request so that she could be home in the evenings and on weekends and so they could travel more.

{¶4} In July 2011, Jack asked Scarlett to lunch, and when they finished eating, he handed her a type-written letter stating that he wanted a divorce. Jack's request for a divorce came as a surprise to Scarlett. The parties remained together in the marital household for several days, until an incident occurred that frightened Jack, and he left the home. Eventually, a domestic violence order was issued, at which point Scarlett moved to Charlottesville, Virginia, to live with her sister.

### The Divorce Action

{¶5} Jack filed a complaint for divorce in September 2011. At the time of trial on the merits of the divorce action, Jack was 74 years old and Scarlett was 58 years old. Jack testified at length regarding his assets. He testified that he had approximately $480,000 in assets when he married Scarlett. Part of that included an IRA funded with money that he had earned from working prior to the marriage, and he had not added to the IRA since the marriage. The other assets were held at various credit unions and banks. All of the funds that had been deposited into those accounts, and which remained in the accounts at the time of trial, were derived from Jack's premarital employment, his retirement benefits, or a certificate of deposit that he had inherited upon his parents' deaths. At all times during the marriage, Jack and Scarlett had kept separate accounts and did not comingle funds.

{¶6} As to Jack's debt, he testified that he had bought a condominium after he and Scarlett had separated. He had withdrawn $200,000 from his savings account to buy the property and had borrowed $20,000 to fund the balance of the purchase price. Jack also owed close to $51,000 on a boat that he had purchased prior to the marriage.

{¶7} At the time of trial, Jack also received approximately $200,000 per year in retirement benefits. This included his pensions from the Judicial Retirees System, the Ohio Public Employee Retirement System, and TIAA-CREF, as well as Social Security benefits.

{¶8} Jack also testified that Scarlett had defaced 200 pieces of his personal memorabilia, including books, photographs, and newspaper clippings, by writing hateful comments on them with black marker. Jack testified that he would like to restore at least 100 of the items, and he presented the testimony of Jennifer Burt from Wiebold Studio, which specializes in antique restoration. Burt testified that Jack had brought a box full of the damaged personal items to the studio and that some of the items could not be restored. Some of the others could be restored, but at a minimum cost of $250 per item. Burt was unable to recall specifically which items she had seen, except for a photograph of John Glenn.

{¶9} Scarlett filed a counterclaim and also requested spousal support. Scarlett testified that she had not been working since she had left LensCrafters in 2009, and that she was no longer able to work. She testified that she had a neurological degenerative disease that had preceded the marriage, and that she had been seeing a psychologist for depression and had been taking sleeping pills. She testified that she was looking for an apartment in Charlottesville, and that she would

expect that to cost her $1,500 per month. As to her assets, she had approximately $28,500 in two separate accounts. Upon reaching age 65, she would receive a pension as a result of her six-year employment with U.S. Shoe. The only debt that Scarlett had was a credit-card account, which she acknowledged was her separate obligation.

### The Trial Court's Decision

{¶10} The magistrate found that the funds in each party's accounts were to remain separate and that neither party had any interest in the other's retirement benefits. The magistrate also found that spousal support for Scarlett was necessary because of the disparity in the parties' income flow. In determining spousal support, the magistrate found that the parties' marriage was one of relatively short duration, from March 1, 2004, the ceremonial marriage date, until March 5, 2012, the day of trial. The magistrate then awarded spousal support in the amount of $5,000 per month for 30 consecutive months beginning in May 2012. However, the magistrate offset $25,000 from the total spousal-support award, prorated at $833.33 per month, to reimburse Jack for the cost to repair his damaged memorabilia. The magistrate also awarded Scarlett $50 per month from Jack's Judicial Retirement System for the rest of Jack's natural life, so that Scarlett would remain eligible for health insurance.

{¶11} Both parties filed objections to the magistrate's decision. The trial court sustained one of Jack's objections regarding the purchase date of his boat, which had no bearing on the division of property or spousal support. The remainder of the objections were overruled, and the trial court adopted the magistrate's

5

decision as modified. The trial court then entered a final decree of divorce, from which Scarlett now appeals.

## *Spousal Support*

{¶12} In her first assignment of error, Scarlett argues that the trial court erred in determining the duration of the marriage for purposes of spousal support. R.C. 3105.171(A)(2) provides that the duration of a marriage is from the date of the marriage through the date of the final hearing in the divorce action, unless the court determines that these dates would be inequitable. Generally, a trial court's determination as to the duration of marriage under R.C. 3105.171(A)(2) is reviewed for an abuse of discretion. *Lemarr v. Lemarr*, 1st Dist. Hamilton No. C-100706, 2011-Ohio-3682, ¶ 4. An abuse of discretion means that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶13} Scarlett argues that the trial court abused its discretion in selecting the parties' ceremonial marriage date as the beginning date of the marriage because the trial court should have given "some consideration" to the long history of the parties, which spanned 31 years. In support of her argument, Scarlett relies on *Abernathy v. Abernathy*, 8th Dist. Cuyahoga No. 80406, 2002-Ohio-4193, for the proposition that a trial court may use a de facto commencement date prior to the actual marriage date, even if the parties were married to other people at the time of the de facto commencement. In *Abernathy*, the trial court selected 1977 as the parties' de facto marriage date, even though they had not actually married until 1983. In that case, however, the parties started living together in 1977, they purchased a home in 1980

6

jointly as husband and wife, they maintained a joint bank account in 1980, and they filed a joint federal tax return for 1979 as husband and wife. *Id.* at ¶ 21.

{¶14} Unlike in *Abernathy* where the parties held themselves out as husband and wife for six years prior to their actual marriage, Scarlett and Jack had "little to no contact" for 16 years prior to their marriage. Moreover, their testimony conflicted on the seriousness of their prior relationship. Therefore, the trial court in this case did not abuse its discretion in selecting the parties' ceremonial marriage date as the beginning date of the marriage, as provided by R.C. 3105.171(A)(2). We overrule Scarlett's first assignment of error.

{¶15} In her second assignment of error, Scarlett argues that the trial court abused its discretion in awarding her spousal support for 30 months, as opposed to seven years. R.C. 3105.18(B) provides that the court may award reasonable spousal support to either party upon request. R.C. 3105.18(C)(1) then sets forth the factors that the trial court must consider in making a spousal-support determination, including, but not limited to, the parties' income, earning abilities, ages and conditions, retirement benefits, duration of the marriage, marital standard of living, and assets and liabilities. The trial court has broad discretion in determining an award of spousal support under R.C. 3105.18(C)(1). *Zerbe v. Zerbe*, 1st Dist. Hamilton Nos. C-040035 and C-040036, 2005-Ohio-1180, ¶ 26, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990).

{¶16} The record demonstrates that the trial court considered all of the relevant factors. Most notably, the trial court found in Scarlett's favor that the parties had a huge disparity in incomes, and that Scarlett had retired in 2009 at Jack's urging. The trial court also determined that the parties had enjoyed an upper

7

class standard of living while married. However, the trial court also found that Scarlett had failed to present any expert medical testimony to substantiate her own testimony that she was no longer able to work at age 58, and that Scarlett had failed to contribute to Jack's income-earning abilities. We cannot say that the trial court abused its discretion in setting the award of support for 30 months instead of seven years for an eight-year marriage. We overrule Scarlett's second assignment of error.

### *Retirement Income as Separate Property*

{¶17} In her third assignment of error, Scarlett argues that the trial court erred in determining that Jack's retirement income was his separate property. A trial court must divide marital property equitably between the spouses. R.C. 3105.171(B). Marital property is defined, in part, as "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii). Similarly, separate property means "[p]assive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(iii). Thus, "[i]f the evidence indicates that the appreciation of the separate property is not due to the input of [one spouse's] labor, money, or in-kind contributions, the increase in the value * * * is passive appreciation and remains separate property." *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998). We review a trial court's division of property for an abuse of discretion. *Dunn v. Dunn*, 1st Dist. Hamilton Nos. C-010282 and C-010292, 2002-Ohio-6247, ¶ 12.

{¶18} Scarlett does not dispute that Jack's retirement assets were acquired prior to the marriage, and that any income earned during the marriage was passive income or appreciation acquired from those assets. Nor does she argue that any

8

labor, monetary, or in-kind contribution occurred during the marriage. Instead, Scarlett argues that the trial court should have considered Jack's retirement income as marital property despite the statute because it was Jack's only source of income during the marriage and because Scarlett's income from LensCrafters was marital. Alternatively, Scarlett argues that the trial court should have made an equitable distributive award of Jack's property under R.C. 3105.171(A)(1) or (E)(2).

{¶19} The trial court followed the plain language of the statute in determining that Jack's retirement income was separate property, but the trial court awarded Scarlett all of her assets from her job with LensCrafters, even though some of those assets were marital property. Moreover, the trial court considered the parties' income disparity when calculating Scarlett's spousal support. Therefore, we cannot say that the trial court abused its discretion in dividing the parties' property. We overrule Scarlett's third assignment of error.

### Offsetting the Cost of Damaged Property

{¶20} In her fourth assignment of error, Scarlett argues that the trial court erred by offsetting the cost of restoring of Jack's memorabilia against her spousal-support award. Scarlett does not challenge the trial court's ability to offset the award, but instead, Scarlett argues that Jack failed to present sufficient evidence from which the trial court could have valued the damaged memorabilia at $25,000. Scarlett contends that because Burt did not actually value each item for restoration, the valuation was speculative.

{¶21} A party moving for damages in a divorce case has the burden of proving those damages, and a court cannot speculate as to damages. *Witmer-Lewis v. Lewis*, 9th Dist. Summit No. 23262, 2007-Ohio-240, ¶ 35. This court will not

reverse a trial court's valuation of property if it is based on some competent, credible evidence. *See Hoskins v. Hoskins*, 1st Dist. Hamilton Nos. C-120130 and C-120213, 2013-Ohio-1126, ¶ 3.

{¶22} Burt testified that Jack brought a box full of damaged personal items to the restoration studio, and that some of those items could not be restored, although some could. She testified that a conservative estimate to repair an item was $250. Jack then testified that Scarlett had damaged 200 items, and that he wanted to repair at least 100 of those items. On this record, we determine that sufficient competent, credible evidence exists to support the trial court's determination as to the cost of restoration. We overrule Scarlett's fourth assignment of error.

### *Judicial Notice of Civil Protection Order*

{¶23} In Scarlett's fifth assignment of error, she argues that the trial court erred in taking judicial notice of the civil protection order entered against her in another case. The magistrate found that, on September 23, 2011, Jack had returned to the marital home to get some of his belongings and that Scarlett had threatened to kill him while brandishing a knife. The magistrate then found that this incident had led to a civil protection order against Scarlett.

{¶24} The civil protection order was not issued in conjunction with this case, nor was it admitted into evidence. Thus, it appears that the magistrate took judicial notice of the proceedings in another case, which he or she is not permitted to do. *See, e.g.*, *Helfrich v. Madison*, 5th Dist. Licking No. 11 CA 26, 2012-Ohio-551, ¶ 41. Nevertheless, we determine that the error did not affect Scarlett's substantial rights. *See* Civ.R. 61. Multiple references were made on the record with regard to a domestic-violence case and to a civil protection order issued against Scarlett. The

record belies any assertion that the trial court was affected by the civil protection order when dividing property or calculating spousal support. Therefore, we overrule Scarlett's fifth assignment of error.

### *Conclusion*

{¶25} Because we overrule Scarlett's assignments of error, the judgment of the trial court is affirmed.

Judgment affirmed.

**DINKELACKER, P.J.,** and **PIPER, J.,** concur.

ROBIN PIPER, J., of the Twelfth Appellate District, sitting by assignment.

Please note:

The court has recorded its own entry on the date of the release of this opinion.