DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Cynthia A. Ohlemacher ("Cynthia"), appeals from the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, that granted her motion for modification of child support and ordered Appellee, Jeffrey B. Ohlemacher ("Jeffrey"), to pay child support in an amount constituting a downward deviation from the guideline support amount. We affirm.
 I. {¶ 2} Cynthia and Jeffrey were married in 1981, and had three children during the marriage, Michael, d.o.b. January 15, 1985, Matthew, d.o.b. June 23, 1986, and Daniel, d.o.b. June 30, 1990. Cynthia and Jeffrey were divorced on February 14, 1994, and, pursuant to a Shared Parenting Plan ("Plan"), Cynthia became the residential parent and custodian of all three children. The judgment entry of divorce originally required Jeffrey to pay $2,500.00 per month in nonmodifiable spousal support, subject to automatic termination on December 31, 1999 or the death of either party, whichever came first.
 {¶ 3} Pursuant to the Plan, Jeffrey was required to pay $2,500.00 per month, plus poundage, in child support for the three children ($833.33, plus poundage, per month, per child). Additionally, the Plan also made Jeffrey establish and fund a college education trust for each child, in the amount of $3,333.33 per year, per child. As to health insurance, the court ordered Jeffrey to maintain coverage for all three children, and to pay 80% of remaining uninsured expenses after Cynthia pays the first $100.00 of uninsured expenses per calendar year per child. The Plan expressly noted that all matters addressed by the Plan were subject to modification and further order of the court.
 {¶ 4} On November 29, 1999, Cynthia filed a motion to modify child support, asserting that Jeffrey's income had increased since the time of divorce and the current needs of the children had also increased. Neither party requested modification of the court's prior order with respect to educational or medical expenses.
 {¶ 5} Pursuant to a hearing, the trial court issued a judgment entry on June 26, 2002 that granted Cynthia's motion to modify child support, and ordered Jeffrey to pay $3,906.24 per month, constituting a downward deviation amount of $3,833.00 from the worksheet guideline calculated child support amount of $7,739.24. The court concluded, based upon a review of Jeffrey's adjusted gross income figures from 1995 to 2001 that his income for the purpose of child support was $539,667.36, and that Cynthia's income for the same purpose was $57,249.75. The court further found that Cynthia was not employed, but that because there was no evidence that she was unable to be employed, she would be imputed an income of $11,400.00, which reflected minimum wage earnings. The court noted that the $11,400.00 figure would be counted in addition to Cynthia's adjusted gross income figures.
 {¶ 6} Cynthia appealed to this Court from the June 26, 2002 judgment entry. We reversed the judgment of the trial court and remanded the case to the trial court for further proceedings consistent with our decision.Ohlemacher v. Ohlemacher, 9th Dist. No. 02CA008108, 2003-Ohio-368, at ¶ 1 ("Ohlemacher I"). We concluded that the trial court failed to comply with the statutory requirements because it applied the parties' respective adjusted gross income figures rather than their gross incomes as required by the statute, and that the trial court failed to address the issue of healthcare expenses in its judgment. Id. at ¶ 8. We ordered the trial court to include all income to the parties in its calculation of child support and to address the healthcare responsibilities. Due to this determination, we did not address the merits of Jeffrey's challenges to the court's deviation from the worksheet amount and refusal to grant attorney's fees to Jeffrey. Id. at ¶ 19.
 {¶ 7} On March 23, 2003, the trial court issued an amended child support order. In the order, the court employed the parties' total income to conclude that Jeffrey's income for purposes of child support was $689,365.00 and Cynthia's income, based on all income and imputed income, was $57,749.75. The court also ordered Jeffrey to maintain healthcare insurance coverage for the children; pay the first $100.00 in healthcare costs not covered by insurance; and to pay 90% of remaining uninsured expenses with the remaining 10% to be covered by Cynthia.
 {¶ 8} Cynthia also filed a notice of appeal to this Court from this amended order. This Court once again reversed and remanded the case to the trial court. Ohlemacher v. Ohlemacher, 9th Dist. No. 03CA008252, 2003-Ohio-6582 ("Ohlemacher II"). We concluded that the trial court's decision to deviate from the original support order constituted reversible error, because the court failed to comply with the requirements set forth in R.C. 3119.22. Id. at ¶ 7. Specifically, we noted that the trial court failed to state in its order Jeffrey's support obligation, establish his specific monthly payment amount, and state findings of fact supporting the deviation from his obligation pursuant to R.C. 3119.22. Id.
 {¶ 9} On remand, the trial court issued a judgment entry that granted Cynthia's motion for modification of child support. The court found that Cynthia and Jeffrey's combined income was in excess of $150,000.0, and stated a guideline calculated child support of $116,302.55 per year, or $9,691.88 per month. However, the court noted, "it would be unjust and inappropriate and would not be in the best interest of the children, [Jeffrey], and [Cynthia] to order the guideline calculated child support amount[.]" Accordingly, the court ordered Jeffrey to pay $3,906.24 per month, constituting a deviation of $5,785.64. The court set forth findings of fact in support of the deviation, stating that the deviation was based on the consideration of the factors set forth in R.C.3113.215(B)(3). As it did in its June 26, 2002 order, the court noted that Jeffrey had established a trust fund, IRA's, generation skipping business trust, in-kind contributions for activities and educational vacations, had paid Michael for the lease of his car, and covered costs of various activities. The court also took into consideration that Jeffrey was responsible for healthcare expenses of the children.
 {¶ 10} Additionally, the court denied Cynthia's motion for attorney's fees in this judgment entry, and stated that each party was responsible for their respective fees. The court made the order retroactive to the date of filing of the motion for modification, and stated that all prior orders regarding the shared parenting plan and support obligations, with the exception of the newly ordered support amount, would remain in full force and effect. This appeal followed.
 {¶ 11} Cynthia timely appealed, asserting four assignments of error for review. We rearrange the order of the assignments of error to facilitate review.
 II. A. First Assignment of Error
"The trial court erred in failing to comply with Ohio Revised Code Section 3113.215 in making its child support guidelines worksheet calculation [.]"
 {¶ 12} In her first assignment of error, Cynthia contends that the trial court failed to comply with statutory requirements in making child support guidelines worksheet calculations. Specifically, Cynthia asserts that the trial court erred in its calculation the parties' respective annual incomes for the purposes of child support.
 {¶ 13} In this case, Cynthia argues that pursuant to R.C. 3113.215, the trial court should have included in the calculation of Jeffrey's annual income his capital gains and losses, interest income, 401(k) contributions, 2.25% of the fair market value of non-income producing property. Additionally, Cynthia asserts that the trial court's calculation of her annual income is not supported by the evidence. Specifically, Cynthia explains that her reported capital gains came from her cashing out of the proceeds from an asset sale that she needed to meet monthly expenses. Cynthia maintains that her capital gains should not be included in her income, because she had to cash them out for monthly expenses, whereas Jeffrey did not have to report his gains because he could afford to retain his capital gains in his retirement account. She insists that this adjustment must be made to keep things "fair and consistent." In addition, Cynthia asserts that the trial court's inclusion of Jeffrey's spousal support payment in her annual income calculation was in contravention of R.C. 3113.215.
 {¶ 14} In Ohlemacher I, this Court disposed of Cynthia's challenge to the trial court's failure to base Jeffrey's child support obligation on gross income figures. However, in that appeal, Cynthia never specifically challenged the trial court's calculation of the gross income figures. The doctrine of law of the case "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3, citingGohman v. St. Bernard (1924), 111 Ohio St. 726, 730. The rationale underlying this doctrine is to maintain consistent results in a case by conclusively settling issues that have previously been litigated, "to avoid endless litigation * * * and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." Hubbard exrel. Creed v. Sauline (1996), 74 Ohio St.3d 402, 404. See, also, LittleForest Med. Ct. v. Ohio Civil Rights Comm. (1993), 91 Ohio App.3d 76,81.
 {¶ 15} Moreover, the Supreme Court of Ohio has held that "the doctrine of law of the case precludes a litigant from attempting to rely on arguments at a retrial which were fully pursued, or available to be pursued, in a first appeal." Hubbard, 74 Ohio St.3d at 404-05. New arguments are barred, as they are subject to issue preclusion. Beifussv. Westerville Bd. of Edn. (1988), 37 Ohio St.3d 187, 191.
 {¶ 16} Cynthia certainly was able to challenge the trial court's method of calculating the gross incomes during the first appeal to this Court in Ohlemacher I, but failed to do so. Therefore, the law of the case doctrine precludes her from raising a challenge to the trial court's calculation of the gross income figure during this subsequent appeal.
 {¶ 17} Cynthia's first assignment of error is overruled.
 B. Third Assignment of Error
"The trial court erred and abused its discretion in failing to follow the remand order of the Ninth Appellate District Court [.]"
 {¶ 18} In her third assignment of error, Cynthia contends that the trial court erred on remand by allegedly not conducting proceedings consistent with this Court's previous decision in this case. We disagree.
 {¶ 19} "When the issues before the trial court on remand are substantially similar to those involved in the prior appeal, the trial court is bound to follow the determination of the law as found by the appellate court." F.M.D. v. Medina (Apr. 5, 2000), 9th Dist. No. 2962-M, citing Nolan, 11 Ohio St.3d at 3. An inferior court has no discretion to disregard a superior court's mandate from a previous appeal in the same case. Nolan, 11 Ohio St.3d at 5. Furthermore, the court is "without authority to extend or vary from the mandate given." Id. at 4. Additionally, in a case involving a partial remand, the trial court may not try an issue that was not set forth in the appellate court's mandate. Pingue v. Hyslop, 10th Dist. No. 01AP-1000, 2002-Ohio-2879, at ¶ 22, quoting Oliver v. Empire Equip. Co. (1985), 8th Dist. No. 48686, at 4.
 {¶ 20} In Ohlemacher II, this Court specifically refused to address the merits of the trial court's prior decision to modify child support, and instead concluded that the trial court's judgment entry failed to include the following: 1) Jeffrey's actual annual support obligation from the guideline worksheet, 2) Jeffrey's corresponding monthly payment amount, and 3) findings of fact supporting the decision to deviate from the actual computed support obligation. Ohlemacher II at ¶ 7. We reversed the judgment of the trial court on these bases and remanded the case to the trial court to articulate these facts. Id. at ¶ 8.
 {¶ 21} On remand from our decision in Ohlemacher II, the trial court stated the actual annual support obligation of $116,302.55, as is reflected in the guideline worksheet and stated the monthly payment of $9,691.88 from the worksheet. Cynthia argues that on remand, the trial court stated the same deviation amount from child support as that ordered previously, but did so without stating any findings of fact to support the deviation amount. Any court-ordered deviation from the child support guideline amount must be supported by findings of fact and must also be journalized. See Marker v. Grimm (1992), 65 Ohio St.3d 139, paragraph three of the syllabus. However, as recounted in our recitation of the facts above, the court set forth findings of fact in support of the deviation, stating that the deviation was based on the consideration of the factors set forth in R.C. 3113.215(B)(3), including specifically R.C. 3113.215(B)(3)(a), (c), (j), (k), and (l).
 {¶ 22} Cynthia maintains that the trial court's reference to the factors listed in R.C. 3113.215(B)(3) and the findings made do not explain how the deviation number was derived. However, the court complied with all child support provisions; it stated its findings of fact in support of the deviation as required by R.C. 3113.215. A trial court's findings in support of a deviation need not be so specific as to support the particular numbers chosen by the court.
 {¶ 23} We find that the trial court fully complied with our decision in Ohlemacher II on remand, and therefore, find that the trial court did not commit the alleged error. Cynthia's third assignment of error is overruled.
 C. Second Assignment of Error
"The trial court erred in deviating from the child support amount calculated pursuant to the child support guidelines worksheet [.]"
 {¶ 24} In her second assignment of error, Cynthia contends that the trial court erred in deviating from the child support worksheet guideline amount. Cynthia specifically claims that the monthly child support obligation should be higher due to the higher income figures, and that the trial court failed to set forth any reasons for its failure to proportionally increase the obligation. Cynthia's contentions lack merit.
 {¶ 25} A trial court possesses broad discretion in child support matters, and the court's decision will not be reversed absent an abuse of discretion. Ohlemacher I at ¶ 5, citing Pauly v. Pauly (1997),80 Ohio St.3d 386, 390. An abuse of discretion connotes "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 26} At the time that Cynthia filed her motion to modify child support, R.C. 3113.215(B)(1) governed the procedure for modifying a child support order.[1] This statute's provisions are mandatory and must be strictly followed in all material respects, as the overriding purpose of R.C. 3113.215 is the best interest of the child for whom the support is to be awarded. Murray v. Murray (1999), 128 Ohio App.3d 662, 666. "[T]he trial court's failure to comply with the literal requirements of the statute constitutes reversible error." (Emphasis sic.) Marker,65 Ohio St.3d at 143.
 {¶ 27} The trial court's original June 26, 2002 judgment entry established a monthly child support obligation of $7,739.24, less deviation of $3,833.00 per month, for a final obligation of $3,906.24. Following a remand from this Court in Ohlemacher I in which we instructed the trial court to use annual gross income rather than the adjusted gross income figure, the court issued a judgment entry with new income figures but without setting forth a monthly obligation. Ohlemacher I at ¶ 7. Pursuant to a second remand from this Court in Ohlemacher II to set forth this support obligation, monthly obligation, and findings of fact in support, the trial court issued a judgment entry establishing a support of obligation of $116,302.55, or $9,691.88 per month, a deviation of $5,785.64, and maintained the same monthly obligation of $3,906.24.
 {¶ 28} Cynthia argues that the trial court's deviation should have maintained the same deviation amount as stated in the original support order, $3,833.00, because this way the children would enjoy the standard of living they would have enjoyed had the marriage continued. Cynthia's overarching argument appears to be that the support obligation should increase in amount accordingly with any increase in income. Cynthia fails to provide this Court with any legal authority to support this proposition. Moreover, the provisions of R.C. 3113.215 and relevant case law do not support such a process. The child support calculation must be determined in accordance with the child support schedule provided in R.C. 3113.215(D) and the applicable model worksheet. R.C. 3113.215(B)(1). The guideline support amount derived from the worksheet is rebuttably presumed to be correct. Id.
 {¶ 29} Furthermore, when the combined gross income of the parents is higher than $150,000, such as in the instant case, the statute mandates that the court determine the child support obligation "on a case-by case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." R.C. 3113.215(B)(2)(b). Additionally, this subsection provides that the court must compute a combined child support obligation
"that is no less than the same percentage of the parents' combined annual income that would have been computed under the basic child support schedule and under the applicable worksheet * * * unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount and enters in the journal the figure, determination, and findings." R.C. 3113.215(B)(2)(b).
R.C. 3113.215(B)(2)(c)(i)-(ii) essentially reiterates the foregoing, stating that a court may not deviate from the child support schedule amount unless it determines, after considering the factors and criteria set forth in R.C. 3113.215(B)(3), that the amount is unjust or inappropriate and would not be in the children's best interests, and journalizes this determination along with findings of fact in support.
 {¶ 30} The court may consider any of the factors and criteria listed in R.C. 3113.215(B)(3), and any other relevant factor, in determining whether the child support amount would be unjust or inappropriate and not in the best interest of the children. R.C. 3113.215(B)(3). In the instant case, the court concluded that Cynthia and Jeffrey's combined gross income was in excess of $150,000.00. In accordance with R.C. 3113.215, the court stated, "it would be unjust and inappropriate and would not be in the best interest of the children, [Jeffrey], and [Cynthia] to order the guideline calculated child support amount." Furthermore, as noted in our disposition of Cynthia's third assignment of error, the trial court supported its decision to deviate with specific findings of fact. The court explicitly considered relevant factors set forth in R.C.3113.215(B)(3)(a), (c), (j), (k), and (l), as well as other relevant factors:
"(a) Special and unusual needs of the children;
"* * *
"(c) Other court-ordered payments;
"* * *
"(j) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
"(k) The relative financial resources, other assets and resources, and needs of each parent;
"(l) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married[.]"
 {¶ 31} The court noted, that, pursuant to prior court order, Jeffrey was already paying $10,000.00 per year in trust for the children's education; has established Individual Retirement Accounts ("IRA") in the children's names; has established a generation skipping trust for the children to pass the wealth of his family business directly to them; has made in-kind contributions to cover costs associated with sporting activities, trainers, and health club memberships, and educational vacations; and has paid directly to one of the children money for the lease of his car. Additionally, the court noted that Jeffrey was ordered to maintain health insurance coverage for the children and to pay for a portion of uninsured medical expenses.
 {¶ 32} Cynthia argues that there was no evidence presented to establish the amounts of these items. Her assertion is contradicted by the wealth of documents submitted by both parties. Even in an event that specific evidence as to certain amounts may not have been presented, Cynthia notably does not contest that Jeffrey has in fact established such significant financial contributions for the children. There is ample evidence in the record to establish that Jeffrey did provide for many of the needs and wants of the children, and to determine the family's economic situation and standard of living. See Kulcsar v. Petrovic
(1984), 20 Ohio App.3d 104, 105-06. Cynthia also maintains that many of these items do not directly and presently benefit the children and do not reduce their current need for support. However, Cynthia fails to even mention what is of primary importance in her argument; Cynthia does not assert on appeal that the amount awarded does not cover all of the children's needs. When determining the necessary and reasonable amount of child support, a court should consider the child's current needs. Baileyv. Mitchell (1990), 67 Ohio App.3d 441, 442, citing Bright v.Collins (1982), 2 Ohio App.3d 421, 426. She does not even begin to discuss the needs of the children, let alone demonstrate what monetary amount covers the children's current needs and why the amount awarded fails to sufficiently address the standard of living above and beyond their needs.
 {¶ 33} In a high-income scenario, "the appropriate standard for the amount of child support is that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued." (Internal quotations omitted.) Berthelot v. Berthelot,154 Ohio App.3d 101, 2003-Ohio-4519, at ¶ 24, quoting Birath v.Birath (1988), 53 Ohio App.3d 31, 37. Fashioning a quantitative guideline for determining this "standard of living" is virtually impossible, for the standard of living enjoyed by a child during the marriage will naturally vary with each case, as is reflected in the high-income provisions of R.C. 3113.215. See R.C. 3113.215(B)(3). Furthermore, the valuation of the standard of living is further shaped by the trial court's application of the numerous "criteria" set forth in R.C. 3113.215(B)(3), and by the broad discretion a court is generally afforded in child support determinations. See Ohlemacher I at ¶ 5;Pauly, 80 Ohio St.3d at 390.
 {¶ 34} Furthermore, one cannot discount the traditional principles that oversee all grants of child support. Each parent has a common law duty to support the minor children. See Jarvis v. Witter, 8th Dist. No. 84128, 2004-Ohio-6628, at ¶ 90-92, citing Haskins v. Bronzetti (1992),64 Ohio St.3d 202, 205. Generally, a father's duty to support his minor children extends only to "necessaries." Kulcsar, 20 Ohio App.3d at 105;Jarvis at ¶ 87. This duty is not impaired by the termination of the marriage. Aharoni v. Michael (1991), 74 Ohio App.3d 260, 263, citingPretzinger v. Pretzinger (1887), 45 Ohio St. 452, paragraph one of the syllabus. This Court has previously attempted to define what is meant by the term "necessaries." See Kulcsar, 20 Ohio App.3d at 105. However, it is important to recognize that the determination of what may qualify as necessaries should probably be made on a case-by-case basis. Aharoni,74 Ohio App.3d at 264. Thus, couched in the determination of child support for high-income families should be a consideration of these principles, as well.
 {¶ 35} In this case, the court found Cynthia's gross income to be $57,749.75. In its judgment entry, the court found that since 1994, Cynthia has experienced an increase in her assets and property settlement, and that Cynthia is in a position to be able to provide vacations and extracurricular activities for the children, as well, and that she has done the same. The evidence in the record shows that the children have already been provided a wealth of financial advantages reflective of a standard of living existent in high-income families.
 {¶ 36} Cynthia opines that because of the current child support amount, the children are only afforded the greater standard of living with Jeffrey. However, a trial court should tread carefully when determining to award a child support amount that is greater than that necessary to cover the current needs of the children; awarding a higher amount in this situation could encroach on Cynthia's own common law duty to support the children. Jarvis at ¶ 90-92; Haskins, 64 Ohio St.3d at 205. See Bryant v. Bryant (Jan. 28, 1999), 5th Dist. No. 97CA8 98CA1 (stating that in high-income cases, the support obligation calculated usually exceeds the amount actually required to provide for the children, but that allocating an amount to satisfy the standard of living requirement runs the risk of making the award "less like child support and more like an equalization of the incomes of the two households"). See, also, Badertscher, Ohio's Mandatory Child Support Guidelines: Child Support or Spousal Maintenance? (1992), 42 Case W.Res. 297 (expressing a concern that a non-custodial parent can rarely overcome the child support guideline amount presumption because it requires that parent to convince the trial court that an excessive award is not in the child's best interest).
 {¶ 37} Based upon the foregoing, we cannot say that the trial court's award of the child support amount in this case was unreasonable. We find that the trial court did not abuse its discretion in ordering a downward deviation for child support. Cynthia's second assignment of error is overruled.
 D. Fourth Assignment of Error
"The trial court erred in failing to make an award of attorney fees to appellant [.]"
 {¶ 38} In her fourth assignment of error, Cynthia contends that the trial court erred when it did not award her a sum for attorney's fees. We disagree.
 {¶ 39} A decision regarding an award of attorney fees is left to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Holcomb v. Holcomb (Sept. 26, 2001), 9th Dist. No. 01CA007795, at 21, citing Bowen v. Bowen (1999), 132 Ohio App.3d 616,642. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore, 5 Ohio St.3d at 219.
 {¶ 40} R.C. 3105.18(H) provides, in relevant part:
"In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including * * * any proceeding arising from a motion to modify a prior order or decree * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether eitherparty will be prevented from fully litigating that party's rights andadequately protecting that party's interests if it does not awardreasonable attorney's fees." (Emphasis added.)
Cynthia does not even argue on appeal that she would be prevented from fully litigating or protecting her rights, let alone demonstrate that she presented sufficient evidence in support of this fact. Cynthia maintains that it was error for the trial court to require a showing that she was unable to effectively litigate her case. However, such a showing is expressly required by the language in R.C. 3105.18(H).
 {¶ 41} Cynthia merely asserts that she presented competent, credible evidence of both attorney's fees and costs incurred, and the disparity in income between the parties. However, the disparity in income is not a factor to be contemplated per R.C. 3105.18(H), and thus, is not a factor appropriate to consider in determining whether to award attorney fees in this context. See Hirt v. Hirt, 9th Dist. No. 03CA0110-M, 2004-Ohio-4318, at ¶ 14 (concluding that the trial court did not abuse its discretion in denying the wife's motion for attorney's fees despite the disparity in the party's incomes).
 {¶ 42} Because Cynthia has failed to demonstrate that she would be unable to adequately protect her interests and fully litigate her rights without an award of her attorney's fees, we cannot say that the trial court abused its discretion in not granting her attorney's fees.
 {¶ 43} Cynthia's fourth assignment of error is overruled.
 III. {¶ 44} Cynthia's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
SLABY, J. CONCURS
[1] In Ohlemacher I, we noted that Cynthia filed her motion before R.C. 3113.215 was repealed and replaced by R.C. 3119.01, et seq., but that R.C. 3113.215 would nevertheless be applied. Ohlemacher I at fn.1.