DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Lee Q. Lewis has appealed from the decision of the Summit County Court of Common Pleas, Domestic Relations Division, which ruled on his objections to a magistrate's decision. This Court affirms in part and reverses in part.
 I {¶ 2} Defendant-Appellant Lee Q. Lewis and Plaintiff-Appellee Dana M. Witmer were married on January 1, 1990. On March 3, 2000, the Summit County Court of Common Pleas, Domestic Relations Division, entered a Final Decree of Divorce, which granted the couple a divorce on the grounds of incompatibility. The divorce decree incorporated the terms and provisions of a negotiated, in-court settlement agreement which included a shared parenting plan for the parties' two minor children. The settlement agreement also included provisions for division of property, allocation of debt, and spousal support.
 {¶ 3} On August 16, 2001, Lewis filed a post decree motion which requested, among other things, the termination of the shared parenting plan, that he be named residential parent and granted child support, and that Witmer be held in contempt of court. On September 28, 2001, Witmer filed a post decree motion which requested termination of the shared parenting plan, an order declaring her residential parent, and other relief.
 {¶ 4} The parenting issues and the financial issues raised in the competing motions were bifurcated by the trial court. After evidentiary hearings, the trial court issued a judgment entry on June 20, 2003, in which the shared parenting plan was terminated and Lewis was designated the residential parent. Witmer was ordered to pay child support to Lewis effective August 23, 2002.
 {¶ 5} The financial issues were presented to the magistrate at five separate hearings over the course of nearly two years. On August 4, 2005, the magistrate issued her decision. On August 15, 2005, Lewis filed objections to the magistrate's decision. On May 15, 2006, the trial court ruled on Lewis' objections to the magistrate's decision and then entered ajournai entry ruling on objections nunc pro tune on May 19, 2006.
 {¶ 6} Lewis has timely appealed, asserting five assignments of error.
 II Assignment of Error Number One
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THAT APPELLANT'S CHILD SUPPORT OBLIGATION WAS $2,400 PER MONTH FOR THE PERIOD FROM MARCH 2000 THROUGH JULY 2002."
 {¶ 7} In his first assignment of error, Appellant has argued that the trial court erred in determining that Lewis' child support obligation continued at a rate of $2,400 per month even though he had exercised a "buy-out" provision shortly after the final divorce decree was issued. Specifically, Lewis has argued that the "buy-out" provision contained in paragraph six of the settlement agreement triggered the provision of paragraph two, wherein Lewis was obligated to pay only $1,000 in child support for a fixed, three year period. This Court disagrees.
 {¶ 8} "Interpretation of an incorporated separation agreement is based upon principles of contract law." (Citation omitted). Simkanin v.Simkanin, 9th Dist. No. 22719, 2006-Ohio-762, at |12. While Lewis is correct that "[generally, contracts should be construed in a manner to give effect to the intentions of the parties[,]" we are also guided by the axiom that "[w]hen the terms included in an existing contract are clear and unambiguous, we cannot create a new contract by finding an intent not expressed in the clear and unambiguous language of the written contract." Hamilton Ins. Serv., Inc. v. Nationwide Ins.Cos. (1999), 86 Ohio St.3d 270, 273. Further, a court will "presume that the parties' intent resides in the language employed in the written document." Evans v. Evans, 4th Dist. No. 02CA2869, 2003-Ohio-4674, at 110, citing Kelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. "When contractual language is clear and unambiguous, courts must look to the express language of the contract to determine the intent of the parties and interpret it according to its plain, ordinary, and common meaning." (Quotations omitted). SummitRetirement Plan Servs., Inc. v. Bergdorf, 9th Dist. No. 23200,2006-Ohio-6154, at ¶ 12.
 {¶ 9} The contested provisions of the settlement agreement are paragraphs two and six. Paragraph two provides, in pertinent part:
 "2. [Lewis] shall continue to pay to [Witmer] as and for child support the sum of Two Thousand Four Hundred Dollars ($2,400.00) * * * until such time as the property located at 3140 Snowgoose Lane, Akron, Ohio 44319 is sold and the sale closes (which is defined as the date that the deed is transferred to the new owner(s)).
 "Commencing on the date of closing of the sale of the real estate located at 3140 Snowgoose Lane, Akron, Ohio 44319 and for a period of three (3) years thereafter, [Lewis] shall pay both child support and spousal support to [Witmer]. During this three (3) year period of time, neither the child support nor the spousal support shall be modified by any court."
The provision goes on to state that Lewis' child support obligation would be $1,000 per month and that his spousal support obligation would be $3,000 per month.
 {¶ 10} Provision six provides in pertinent part:
 "6. [Lewis] is the sole owner of the real estate located at 3140 Snowgoose Lane, Akron, Ohio 44319 in which [Witmer] currently resides. The parties agree that [Lewis] shall immediately list said property for sale with a Realtor of his choice. When the property is sold and the sale closed, [Lewis] shall, from the sale proceeds, immediately pay to [Witmer] the sum of Forty Thousand Dollars ($40,000).
 * * *
 "Until the residence * * * is sold, [Witmer] shall have the sole right to reside in said residence free and clear of any interference by [Lewis]. While the residence is on the market for sale [Witmer] shall be solely responsible for all utility payments and [Lewis] shall be solely responsible to pay all mortgage, taxes and insurance payments as they become due and payable. Upon the sale and closing of this residence, [Witmer] shall have thirty (30) days after the closing to vacate said residence.
 "It is further agreed that while the house * * * is listed for sale, [Lewis] shall have the option of paying all of the money then due and payable to [Witmer]. Should [Lewis] exercise this option, then upon payment and receipt of said money [Witmer] shall have sixty (60) days to vacate the property."
 {¶ 11} Essentially, Lewis has argued that the trial court misinterpreted the above provisions of the settlement agreement. Lewis has argued that the provisions involved are vague and ambiguous and has urged this Court to apply the rales of contract construction to determine the intent of the parties. Lewis has argued that a question exists whether the parties intended the reduction of his child support obligation to be triggered solely by the sale and closing of the marital residence, or whether, in the alternative, the reduced obligation would also be triggered by exercising the buy-out provision contained in paragraph six.
 {¶ 12} This Court finds the language in paragraphs two and six to be clear and unambiguous. Paragraph two clearly states that Lewis' reduced child support payment is to be triggered by the sale and closing of the marital residence. There is no mention that the reduced obligation may also be triggered by exercising the buy-out provision. Further, paragraph six clearly states that the only result from exercising the buy-out option is that Witmer would have sixty days to vacate. Paragraph six is silent about whether exercising the buy-out option triggers the reduced child support contained in paragraph two.
 {¶ 13} Further, it is clear that paragraphs two and six are independent clauses and are in no way reliant on each other. In fact, the paragraphs are in completely separate and distinct sections of the agreement: paragraph two in the "support" section and paragraph six in the "distribution of property" section. The two sections are separated by boilerplate language describing the obligor's duty to maintain current contact information with the child support enforcement agency and applicable enforcement actions. Furthermore, neither paragraph makes any reference to the other in any fashion. There is no indication that one paragraph is connected to the other.
 {¶ 14} Based on the presumption that the parties' intent resides in the plain language of the settlement agreement and the clear and unambiguous language of the contested provisions therein, there is no reason for this Court to believe that the parties' intended the buy-out provision to trigger Lewis' reduced child support obligation.
 {¶ 15} Lewis has also argued that interpreting the settlement agreement in a way that precludes the buy-out provision from triggering the reduced child support obligation causes paragraph two to be meaningless, and thus violative of the rales of contract interpretation. Specifically, Lewis has argued that under the interpretation described above, he could conceivably avoid his increased support obligation[1]
by exercising the buy-out and then never selling the marital residence. At first blush, this argument appears to have merit. If Lewis could exercise the buy-out option and never sell the house, and if his increased total support obligation was contingent solely on him selling the house, then he could theoretically avoid paying increased support, which would frustrate the intent of the parties as described in paragraph two.
 {¶ 16} However, Lewis' hypothetical fails because it is based on a faulty premise. A close examination of the settlement agreement reveals that Lewis did not have the option to exercise the buy-out provision and retain the property indefinitely. According to paragraph six, Lewis was to "immediately list said property for sale with a Realtor of his choice." Lewis was contractually obligated to sell the residence. The buy-out provision solely operated to allow Lewis to buy out Witmer's interest in the property; it did not allow him to retain the property.
 {¶ 17} This analysis also drives home the point that the paragraphs could have been written in such a way as to reference each other had that truly been the intent of the parties. In this particular instance, paragraph six compliments paragraph two. However, the same cannot be said about the buy-out provision. Paragraph two specifically states that "[Commencing on the date of closing of the sale of the real estate . . . and for a period of three (3) years thereafter, [Lewis] shall pay both child support and spousal support to [Witmer]." This provision could have easily stated "commencing on the date of closing of the sale of the real estate or the tender of the $40,000 buy-out detailed in paragraph 6." However, it does not.
 {¶ 18} If in fact it was the intent of the parties to include the buy-out option as a trigger for the change in Lewis' support obligation, the parties' are simply victims of an inartfully drafted contract. Because the provisions are clear and unambiguous, this Court cannot strive to find an intent not expressed in the plain language of the settlement agreement. Accordingly, Lewis' exercise of the buy-out provision did not trigger the reduced child support obligation, and the trial court did not err in holding that Lewis was required to pay child support in the amount of $2,400 per month pursuant to paragraph two of the settlement for the period March 2000 through July 2002.[2]
 {¶ 19} Lewis' first assignment of error lacks merit.
 Assignment of Error Number Two "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN DETERMINING THAT APPELLANT'S CHILD SUPPORT OBLIGATION WAS REINSTATED AT A RATE OF $1,000 PER MONTH FOR THE PERIOD FROM JANUARY 2004 THROUGH MAY 2006."
 {¶ 20} In his second assignment of error, Lewis has argued that the trial court erred in reinstating his child support obligation, pursuant to the terms of the settlement agreement, despite the fact that he had been named residential parent. Specifically, Lewis has argued that the trial court's June 20, 2003 order, which named him residential parent and ordered Witmer to pay child support, bars the trial court's reinstatement of child support under the doctrine of res judicata. This argument is not pertinent.
 {¶ 21} According to the record before this Court, Lewis did not raise the issue of res judicata before the trial court. In his memorandum in support of objections to the magistrate's decision, Lewis solely argued that his obligation to pay child support was "essentially" terminated effective August 22, 2002, by the trial court's June 20, 2003 order which named him residential parent as of August 23, 2002. At no time, however, did Lewis raise the issue of res judicata. Accordingly, Lewis may not raise this issue for the first time on appeal. Wolford v.Sanchez, 9thDist. No. 05CA008674, 2005-Ohio-6992, at 121.
 {¶ 22} Further, res judicata requires a valid, final judgment on the merits of the issue. See Gordon v. Figetakis, 9th Dist. No. 22589,2005-Ohio-5181, at 18, quoting State ex rel. Schneider v. Bd. ofEdn. OfNorth Olmstead City School Dist. (1988), 39 Ohio St.3d 281, 281-282. As the June 22, 2003 order never explicitly terminated Lewis' child support obligation, Lewis' true objection was that his child support obligation was terminated as a matter of law solely because he became the residential parent. This theory is inherently different than one utilizing the doctrine of res judicata.
 {¶ 23} However, assuming arguendo that Lewis' objection preserved the issue of res judicata, his argument still fails because pursuant to R.C.3105.65(B), a trial court retains jurisdiction over matters pertaining to custody and support. Eden v. Eden, 9th Dist. No. 02CA008077, 2003-Ohio-356, at 110. Accordingly, the doctrine of res judicata is inapplicable with regard to this assignment of error.
 {¶ 24} Lewis' second assignment of error lacks merit.
 Assignment of Error Number Three "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THAT APPELLANT'S SPOUSAL SUPPORT OBLIGATION WAS $3,000 PER MONTH FOR THE PERIOD FROM JANUARY 2004 THROUGH MAY 2006."
 {¶ 25} In his third assignment of error, Lewis has argued that the trial court erred in determining that his spousal support obligation began in January 2004, after the sale of the marital residence, and not in March 2000, when he exercised the buy-out provision.
 {¶ 26} For the reasons outlined in Assignment of Error Number One, Lewis' third assignment of error lacks merit.
 Assignment of Error Number Four "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO FIND THAT APPELLANT IS ENTITLED TO ADDITIONAL SET-OFFS FOR VARIOUS COSTS AND EXPENSES HE INCURRED."
 {¶ 27} In his fourth assignment of error, Lewis has argued that the trial court erred when it failed to find that he was entitled to various setoffs for costs and expense he incurred. Lewis has cited numerous setoffs and for the sake of clarity, this Court will address them individually.
Rehabilitation of the Snowgoose Property
 {¶ 28} Lewis has claimed that when he took possession of the marital residence on July 17, 2001, the home was in a heightened state of disrepair and that he spent $9,598.05 to rehabilitate the property to a sellable condition. It is uncontested that Witmer was in sole control of the property from the date of the divorce until July 16, 2001. The trial court found that both parties were credible, that plausible explanations were put forth concerning the condition of the premises, and that Lewis' expenses were incurred in the ordinary course of maintenance of the property.
 {¶ 29} Essentially, Lewis has argued that Witmer committed waste and damage to the Snowgoose property that made it impossible to sell until the property was rehabilitated. Conversely, Witmer has argued that she was precluded from returning to the home to finish moving and to clean by Lewis when he changed the locks. This Court has reviewed the evidence provided by Lewis, to wit: 1) photographs of the damage; 2) videotape footage taken of the home; 3) applicable oral testimony at the hearings; 4) a letter from Lewis' real estate agent; and 5) a letter to Lewis from the Summit County Health Department.
 {¶ 30} It is clear to this Court that waste occurred at the Snowgoose property. The video footage and photographs depict a house in deplorable condition. The testimony of Witmer and her witnesses that they intended to come back the next day to finish moving and to clean is unconvincing. There was also testimony that Witmer intended to finish numerous uncompleted odd jobs prior to turning the house back over to Lewis. This argument is unconvincing as well.
 {¶ 31} The evidence demonstrates that the house was filthy when Lewis took possession. The carpets were horribly stained, at least one toilet was clogged with excrement and paper, the floors were covered with dirt and cat litter, the house and garage were strewn with empty soda cans and pizza boxes, and most of the rooms in the house still contained heaps of personal belongings. In addition to being unclean, the house required numerous repairs and presented multiple half-finished "odd jobs" such as: torn wallpaper, broken light fixtures, the deck and some walls half painted, bags of trash to be removed and wall patches to be applied.
 {¶ 32} Accordingly, this Court finds that the house was in such a state of disrepair that it would be virtually impossible for Witmer and her helpers to have moved, cleaned, and repaired the home in one day as claimed. The poor condition of the home at the time Lewis took possession was sufficient to constitute waste. We note that if a tenant had left the property in such a deplorable state, there would be no question that the landlord would have a valid claim against them. Therefore, Lewis was entitled to set-off for the costs to repair the damage done to the property. However, this Court finds that the locksmith and mulching costs claimed by Lewis ($175.55 and $633.61) were incurred in the ordinary course of maintenance, were not associated with Witmer's waste, and should not be included in any calculation of the set-off Lewis is entitled to.
 {¶ 33} In conclusion, this Court finds that Lewis is entitled to some set-off for the rehabilitation of the Snowgoose property. This matter will be remanded to the trial court for a determination of how much of the waste could have been mitigated by Witmer in a 24 hour period and the amount of the remaining set-off.
Property Expenses
 {¶ 34} Lewis has claimed that he paid property expenses on behalf of Witmer after he exercised the buyout option. Lewis has claimed that he paid homeowner's association fees, multiple insurance payments on the home's contents, and utility bills. Initially, we note that the homeowner's association fees were Lewis' responsibility. He was the owner of the home and the settlement agreement did not require Witmer to pay the homeowner's fees. There is no justification for Witmer to bear the cost of the homeowner's association fees on a property which Lewis owned.
 {¶ 35} With regard to the utility bills, Lewis has attempted to obtain set-off for the entire amounts of the bills he paid. However, Lewis testified that he would have retained sewer, electric and gas service to the home even in the event that Witmer was no longer in the residence. Lewis has failed to prove his damages in that he failed to demonstrate the difference between the utility costs with Witmer living in the residence and the utility costs with the residence vacant. Lewis had the burden of proving his damages and this Court will not speculate as to damages. Agarwal v. Mulligan, 9th Dist. No. 22021, 2004-Ohio-4574, at |9 (stating "[u]nder Ohio law * * * a party cannot recover purely speculative damages").
 {¶ 36} With regard to the insurance payments, there is no evidence which proves that Lewis did not make these payments gratuitously or of his own volition. The insurance policy covered Witmer's possessions, not his, and was taken out by Witmer, and in her name. There is no evidence that Witmer agreed to pay Lewis back. Further, the settlement agreement reads that Lewis is "solely responsible to pay all mortgages, taxes and insurance payments[.]" Interpreted narrowly, the plain language of the settlement agreement would indicate that Lewis was responsible for the insurance payments. Either way, this Court concludes that Lewis is not entitled to set-off for the insurance payments he has claimed.
 {¶ 37} In conclusion, Lewis is not entitled to set-off for the property expenses.
On-Going Property Expenses
 {¶ 38} Lewis has claimed that he is entitled to set-off for property expenses incurred by him until the Snowgoose property sold. These expenses include mortgage payments, monthly utilities, property taxes and insurance, finance charges, homeowner's association fees, and lawn service. Specifically, Lewis has argued that these expenses could have been avoided entirely had Witmer not impeded the listing and subsequent sale of the Snowgoose property and had she not committed waste which further delayed the sale of the home due to Lewis' renovation of the property for sale.
 {¶ 39} Lewis has presented no evidence that the Snowgoose property would have sold other than a letter from his real estate agent recounting prospective buyers and two seemingly "very interested" parties. Alone, this evidence is insufficient to establish to what extent Lewis was damaged by Witmer's conduct. Lewis' argument is completely speculative, and as stated above, a party cannot recover purely speculative damages. Agarwal at ¶ 9. Lewis is not entitled to set-off for the ongoing property expenses claimed.
Unpaid Prescription, Medical, Activity, and Timeshare Expenses
 {¶ 40} Lewis has argued that he is entitled to set-off for Witmer's share of unpaid prescription, medical, activity, and timeshare expenses. This Court finds that the settlement agreement required that the parties share uninsured medical, dental and orthodontia expenses. According to the settlement agreement, Lewis' was to pay 75% of these expenses and Witmer was to pay 25%. Witmer has argued that some services were incurred at providers apart from those named in the settlement agreement. While the settlement agreement does name specific medical and dental providers, this clause does not invalidate medical expenses incurred from other providers. Quite simply, agreeing on primary medical providers for her children does not obviate Witmer's responsibility to pay her share of necessary medical expenses for her children, regardless of the provider.
 {¶ 41} With regard to the disputed activity fees, the settlement agreement required that Witmer and Lewis share equally in the activity expenses of the children. As such, Lewis is entitled for set-off for any activity expenses he incurred to which Witmer did not contribute.
 {¶ 42} With regard to the Disney timeshare, the settlement agreement provided that Witmer pay one half of the annual tax assessment on the timeshare. The trial court found that Witmer failed to pay her share of the timeshare taxes, yet also found that Lewis had failed to provide Witmer with the documentation necessary to enjoy the time share. Accordingly, Lewis denied Witmer the benefit of her bargain and the trial court did not abuse its discretion in determining that Lewis was not entitled to set-off for this particular expense. Lewis should not be allowed to reap a windfall for not complying with the settlement agreement.
 {¶ 43} In conclusion, Lewis is entitled to set-off for the unpaid medical, dental and activity expenses. He is not entitled to set-off for the Disney timeshare tax expenses.
Additional Children's Expenses
 {¶ 44} Lewis has argued that he is entitled to set-off for expenses he incurred on behalf of the children which should have been funded by his child support. Such expenses include: haircuts, school supplies, field trips, school clothes, cheerleader banquets, and basketball pictures. According to the shared parenting plan, which was in effect during the period in which Lewis is demanding set-off, the parents had shared custody and both were responsible for providing care for the children while living with them. Purchasing haircuts and school supplies for your children is inherent in caring for them. Taken to the extreme, under Lewis' theory, he would also be able to claim set-off for toothpaste or soap used by the children simply because he paid child support. This Court finds no merit in such an argument.
Summary
 {¶ 45} In summary, Lewis is entitled to set-off for rehabilitating the Snowgoose property and for the unpaid medical, dental and activity expenses. Accordingly, the trial court abused its discretion in determining that Lewis was not entitled to set-off for these expenses. However, Lewis is not entitled to set-off for the property expenses, the ongoing property expenses, the Disney timeshare taxes, and the additional children's expenses. On remand, the trial court is directed to determine the amount of set-off to which Lewis is entitled.
 Assignment of Error Number Five "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING APPELLEE AN ATTORNEY'S FEES AWARD IN THE AMOUNT OF $13,500."
 {¶ 46} In his fifth assignment of error, Lewis has argued the trial court erred in awarding Witmer $13,500 in attorney's fees. This Court disagrees.
 {¶ 47} An appellate court reviews a trial courts decision regarding attorney's fees under an abuse of discretion standard. Demcho v.Demcho, 9th Dist. No. 03CA0105-M, 2004-Ohio-4868, at ¶ 23. Therefore, "[a]bsent an attitude that is unreasonable, arbitrary or unconscionable, this Court will not reverse a trial court's award of attorney's fees in a post-divorce action." Id. R.C. 3105.18(H), in effect at the time of the post decree motions, provides:
 "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including * * * any proceeding arising from a motion to modify a prior order or decree * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." (Eff 1/1/98; provision deleted 4/27/05 by 150 v H 36)
R.C. 3105.18(H) expressly required a showing that Witmer was unable to effectively litigate her case. Young v. Young, 9th Dist. No. 04CA0057,2005-Ohio-2392, at ¶ 11, citing Ohlemacher v. Ohlemacher, 9th Dist. No. 04CA008488, 2005-Ohio-474, at ¶ 40.
 {¶ 48} Lewis has presented two arguments concerning his fifth assignment of error. First, he has argued that the trial court failed to address the three prong test outlined in R.C. 3105.18(H), that is, that the trial court: 1) did not determine that the fees were reasonable; 2) did not determine that he had the ability to pay attorney's fees; and most importantly, 3) did not determine that Witmer was prevented from fully litigating her rights or adequately protecting her interests without an award of attorney's fees. Lewis has based this argument solely on the lack of express statements by the trial court in its decision indicating that it had made the determinations mandated by R.C.3105.18(H). The trial court simply incorporated the magistrate's statement that attorney's fees were awarded "based on the affidavit, disparity of income and property [and] post trial briefs."
 {¶ 49} Initially, we note that disparity in income is not a factor under R.C. 3105.18(H). Id. at ¶ 12, citing Ohlemacher at ¶ 41. Thus, "it is not a factor which must be considered in determining whether to award attorney fees in this context." Id., citing Hirt v. Hirt, 9th Dist. No. 03CA0110-M, 2004-Ohio-4318, at ¶ 14 (concluding that the trial court did not abuse its discretion in denying the wife's motion for attorney's fees despite the disparity in the party's incomes). Disregarding then the disparity of income, this Court cannot conclude that the trial court failed to make the necessary determinations under R.C. 3105.18(H).
 {¶ 50} Lewis has not provided any authority which requires the trial court to expressly state in the record that it made such determinations. His argument simply assumes that the trial court did not make the determination because it did not say so in its journal entry. However, this Court has held that a trial court is not obligated to provide a detailed analysis or express statements that the trial court made the necessary determination under R.C. 3105.18(H). See Watral v.Watral, 9th Dist. No. 05CA0017-M, 2005-Ohio-6917, at ¶ 25. Further, Lewis has provided no evidence to demonstrate that the trial court failed to make this necessary determination. Absent evidence to the contrary, this Court "must presume that the trial court applied the law correctly." State v. Coombs (1985), 18 Ohio St.3d 123, 125. We therefore presume that the trial court made the necessary determinations in reaching its conclusion.
 {¶ 51} Second, to the extent that Lewis has disputed the merits of the trial court's decision, this Court cannot find that the trial court abused its discretion when it awarded attorney's fees to Witmer. The trial court clearly determined the reasonableness of the fees because it based its award on the affidavit of Witmer's attorney. The affidavit attested to the reasonableness of the fees and the trial court's reliance on it was not unreasonable, arbitrary or unconscionable. Further, given the trial court's knowledge of Lewis' financial status, it was not unreasonable for it to conclude that Lewis had the means to pay Witmer's attorney's fees. Finally, contrary to Lewis' assertions, the record does indicate that Witmer asserted that she was unable to pay her attorney's fees and presented evidence supporting that contention. In her post trial brief, on which the trial court partially based its decision, Witmer stated that she earned wages below poverty level and had spent the entirety of her divorce settlement on the fees and costs associate with the original divorce action. It is clear that Witmer was unable to pay her attorney's fees and would have been precluded from litigating the post decree action in the absence of an award of attorney's fees.
 {¶ 52} Therefore, this Court cannot say that the trial court abused its discretion when it held Witmer was entitled to attorney's fees.
 {¶ 53} Lewis' fifth assignment of error lacks merit.
 III {¶ 54} Based on the foregoing, Lewis' first, second, third, and fifth assignments of error are overruled. Lewis' fourth assignment of error is overruled in part and sustained in part. Accordingly, the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to ran. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
SLABY, P. J.
BAIRD, J.
CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] For clarity, upon selling the house, Lewis' child support obligation decreases from $2,400 to $1,000 per month. However, he also incurs a spousal support obligation of $3,000 per month. Overall, his total support obligation increases from $2,400 per month to $4,000 per month. In this assignment of error, Lewis is only disputing the child support obligation.
[2] At which point, the trial court held that Lewis' support obligation changed due to him becoming residential parent. The marital property did not sell until December of 2003.